**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBBRA J. HILL,
           *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,
           *Defendant-Appellee.*

No. 10-35879

D.C. No.
1:09-cv-00136-RFC

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

Argued and Submitted
July 12, 2011—Portland, Oregon

Filed October 26, 2012

Before: Alfred T. Goodwin, Harry Pregerson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Pregerson

**COUNSEL**

John E. Seidlitz, Jr., Seidlitz Law Office, Great Falls, Montana for the plaintiff-appellant.

David I. Blower, Social Security Administration, Office of the General Counsel, Denver, Colorado for the defendant-appellee.

**ORDER**

The opinion filed August 7, 2012 is withdrawn. A superseding opinion is being filed concurrently with this order. In the opinion, Part I of the Discussion, paragraph six, penultimate sentence, starting with "Dr. Johnson's statement" and ending with "Hill faces" shall be amended in full to read as follows:

> Dr. Johnson's statement that Hill would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's *likelihood* of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions.

Thus, the Defendant-Appellee's Petition for Panel Rehearing is denied as moot.

## OPINION

PREGERSON, Circuit Judge:

On December 7, 2006, Debbra Jo Hill ("Hill") filed for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. Hill alleged disability beginning April 4, 2004. Hill claims that she is disabled due to unstable diabetes, eyesight problems, bipolar disorder, anxiety, depression, a back injury, a right shoulder injury, a history of two small strokes, attention deficit hyperactivity disorder, a seizure disorder, and unpredictable euphoria.

The Social Security Administration denied Hill's application, and denied it again after reconsideration. On September 24, 2008, Administrative Law Judge ("ALJ") Lloyd E. Hartford held a video hearing. Hill was represented by counsel and testified at the hearing, along with Dr. Monty Kuka, Ph.D., a non-examining medical expert, and James Fortune, a vocational expert. The ALJ issued a written decision denying Hill's application on April 6, 2009. The Appeals Council denied Hill's request for review, thereby making the ALJ's decision the final decision subject to judicial review. Hill then filed a complaint with the district court. The district court adopted the findings and recommendation of a magistrate judge, granted summary judgment in favor of the Commissioner, and affirmed the ALJ's decision. Hill appeals the district court's decision.

On appeal, Hill argues that the ALJ's decision denying all benefits was not supported by substantial evidence. Specifically, Hill argues that: (1) the ALJ ignored or failed to con-

sider evidence favorable to Hill, including the medical
opinions of Hill's counselors, therapists, and treating physi-
cians; and, (2) the hypothetical question the ALJ posed to the
vocational expert improperly excluded evidence of Hill's lim-
itations. As discussed below, we agree with Hill that the ALJ
failed to consider evidence favorable to Hill and posed an
improper hypothetical to the vocational expert.[1] Accordingly,
we reverse the district court's grant of summary judgment in
favor of the Commissioner.

## BACKGROUND

### A. Hill's Background

Debbra Jo Hill is currently 54 years old. Hill did not gradu-
ate from high school, but she earned her GED. She worked as
a certified nurse's assistant ("CNA") from 2000 until 2004
when she suffered a shoulder injury on the job. She had previ-
ously worked at a fast food restaurant, as a housekeeper, and
as a telemarketer and bill collector for short periods of time.
Hill was intermittently homeless and living out of her car or
with friends in 2005 and 2006. At the time of the hearing
before the ALJ, Hill lived by herself and worked part-time,
approximately 15 to 20 hours a week, as a cashier/stocker at
the Dollar Tree store in Great Falls, Montana, earning $7.21
an hour.

Hill was diagnosed with diabetes mellitus (type II) in 2002.
Her diabetes was poorly controlled, in part because Hill could
not afford to buy insulin and often relied on samples from
clinics. She was also living out of her car for a time, and her
doctors worried that she would not be able to properly moni-
tor her blood sugar levels.

---

[1]Hill also argues that the ALJ erred in finding that Hill's subjective tes-
timony about her limitations was not credible. Because we resolve this
case on alternative grounds, we do not address Hill's argument that the
ALJ's adverse credibility finding was improper.

Hill injured her right shoulder and hand in 2004 and underwent two surgeries. She was limited to lifting no more than ten pounds, and has trouble reaching above her head. Hill was referred to physical therapy, but attended only 7 out of 23 scheduled sessions. Later, Hill had "fair compliance" with her attendance and "overall was improving."

Hill was diagnosed with bipolar disorder around 1998. She was last hospitalized for her bi-polar condition in July 2007, under the care of Dr. Mark Mozer, a psychiatrist. She was also diagnosed with borderline intellectual functioning by Dr. Lynn Johnson, a psychologist, after tests revealed that Hill's full scale IQ was 76, in the 5th percentile.

In 2000, Dr. Mary Ann Evans diagnosed Hill with panic disorder with agoraphobia, major depressive disorder, bipolar disorder, polysubstance dependence in resolution, cognitive disorder, chronic pain from her work injury, Hepatitis B and C, and other ailments. In 2001, Dr. Evans witnessed Hill having two limited symptom panic attacks. She was also diagnosed with diabetes, hypertension, hyperlipidemia, and chronic anxiety and panic syndrome by Dr. Steven Chrzanowski at Benefis Healthcare in 2006. While working at the Dollar Tree, Hill had panic attacks so severe that she had to go to the back room and collapsed. These attacks were witnessed by Hill's case manager and job coach, Patty Mills.

Hill's most recent panic attack occurred at work on March 7, 2008. Hill's manager at the Dollar Tree called Hill's job coach, Patty Mills, to intervene because Hill had been acting strangely. Ms. Mills later submitted a letter that states, in relevant part,

> As the Employment Specialist at the Center for Mental Health, I would never have placed [Hill] at the Dollar Tree. I have had to intervene with scheduling problems. I have witnessed her in a manic phase in which she was edgy at work, rocking back and forth

> while trying to stack, and people were staring at her.
> I was called to come and get her since they thought
> that she was on drugs. I have [ ] good communica-
> tion[ ] with the manager so I was able to help them
> learn about bipolar.
>
> I think [Hill] needs assistance. She does not handle
> stress well. I have had a lot of talks with [Hill] on
> being positive. She has problems with co-workers. It
> becomes a "he said, she said" relationship which
> originally starts out good. She calls in sick [due to]
> health problems so she is getting fewer hours.

After her panic attack, Hill "slept for about five days," and
Ms. Mills advised her that her manager had requested a doc-
tor's release before Hill could return to work. She obtained a
letter from her therapist, Tammi Coffey, which stated that
"there are no recognizable clinical reasons why Ms. Hill
would not be able to return back to work." Hill returned to
work sometime after March 21, 2008, more than two weeks
after the panic attack.

## B.    The ALJ's Decision

   The ALJ performed the five-step sequential analysis
required under 20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also
Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

   First, the ALJ found that Hill "ha[d] not engaged in sub-
stantial gainful activity since April 4, 2004, the alleged onset
date." While noting that Hill had worked after her alleged dis-
ability onset date, the ALJ found that "this work did not rise
to the level of substantial gainful activity." Since April 15,
2007, and at the time of the hearing, Hill had been working
part-time approximately 15 to 25 hours a week as a cashier at
the Dollar Tree, earning about $600 per month. But the ALJ
found that this work "has never risen to the level of substan-
tial gainful activity" because her earnings were less than the

amounts prescribed by the earnings guidelines set forth by the Social Security Administration.

At step two, the ALJ found that Hill has the following severe impairments: "diabetes mellitus; status post right rotator cuff repair times 2; bipolar disorder; mixed personality disorder, not otherwise specified; anxiety; and borderline intellectual functioning[.]"

At step three, the ALJ found that Hill "does not have an impairment or combination of impairments that meets or medically equals" one of those on the Listing of Impairments.[2]

At step four, the ALJ determined that Hill's residual functional capacity was the ability to

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[3] except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can push and/or pull on a frequent basis with her right upper extremity. She can climb ramps/stairs, balance, stoop, kneel, crouch, and crawl frequently. She can climb ladders, ropes, or scaffolds occasionally. She can reach overhead occasionally with her right arm. She should avoid concentrated exposure to hazards

---

[2]The Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and described at 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b) (same).

such as moving machinery and unprotected heights. She should perform work that requires only occasional interaction with the public and co-workers and that interaction should be on a brief, superficial basis. She can ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors. She can understand, remember, and carry out very short and simple work instructions. She can remember locations and work-like procedures. She can maintain attention and concentration for extended periods to perform simple work tasks. She can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She can sustain an ordinary routine without special supervision. She can make simple work-related decision[s]. She can complete a normal workday and workweek without interruptions from psychologically based symptoms, and she can perform at a consistent pace without an unreasonable number and length of rest periods. She can respond appropriately to changes in the work setting. She can travel in unfamiliar places or use public transportation. She can set realistic goals or make plans independently of others.

The ALJ noted that he had reduced Hill's residual functional capacity to accommodate limitations due to Hill's shoulder pain and "difficulty maintaining concentration, persistence, and pace to perform complex or detailed tasks[,]" and to incorporate limitations from Hill's mental impairments.

At step five, the ALJ found that Hill could perform jobs that exist in significant numbers in the national economy in light of her age, education, and residual functional capacity. The ALJ noted that Hill was 46 years old at the time of her alleged disability onset date, which would put her in the "younger individual age 18-49" category, but that she had

subsequently changed to the "closely approaching advanced age" category. The ALJ also found that Hill has "at least a high school education and is able to communicate in English." The ALJ asked vocational expert Fortune whether jobs exist in the national economy for an individual with Hill's age, education, work experience, and residual functional capacity. Fortune offered representative occupations in the light, unskilled category, including office machine operator (520 regional jobs and 290,000 national jobs), mail clerk (1000 regional jobs and 141,170 national jobs), and photograph processor (800 regional and 63,500 national jobs), and masker (475 regional jobs and 178,000 national jobs). Based on this testimony, the ALJ found that Hill was not disabled.

## STANDARDS OF REVIEW

We review a district court's order affirming the Commissioner's denial of benefits de novo. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

## DISCUSSION

A claimant is considered "disabled" under the Social Security Act if: (1) "he is unable to engage in any substantial gain-

ful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A), and, (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In order to determine whether a claimant is disabled, the ALJ performs the five-step sequential analysis required under 20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Tackett v. Apfel*, 180 F.3d at 1098; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

In this case, the ALJ found that Hill (step 1) had not engaged in substantial gainful activity since her alleged disability onset date, and (step 2) suffered from several severe physical and mental impairments (step 3) that did not meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act, but which limited (step 4) her residual functional capacity to performing light work that required only occasional, brief, and superficial interaction with the public and with co-workers. Although these limitations prevented Hill from performing any past relevant work, the ALJ found that Hill could (step 5) perform jobs that exist in significant numbers in the economy, and thus found Hill not disabled, as defined under the Social Security Act. Neither party challenges the ALJ's findings at steps one through three. Hill, however, challenges the ALJ's determination of her residual functional capacity at step four, and its use in the hypothetical question asked of the vocational expert at step five.

## I.   The ALJ's Consideration of the Evidence

[1] The ALJ found that Hill has the residual functional capacity "to perform light work . . . . that requires only occa-

sional interaction with the public and co-workers . . . ." Hill argues that the ALJ ignored or failed to consider evidence favorable to Hill when making the residual functional capacity determination.

### A. Dr. Lynn Johnson

**[2]** Hill argues that the ALJ's residual functional capacity determination failed to take into account an evaluation by Dr. Lynn Johnson, a psychologist who examined Hill on May 25, 2007. In her evaluation, Dr. Johnson found that Hill's "combination of mental and medical problems makes *the likelihood of sustained full time competitive employment unlikely.*" (emphasis added). Hill correctly notes that the ALJ's decision does not address this finding by Dr. Johnson.

**[3]** In order to reject an examining physician's opinion, "the ALJ has to give clear and convincing reasons. . . . Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

**[4]** Here, the ALJ failed to provide Dr. Johnson's statement *any* degree of review at all, and gave no reasons for doing so, let alone any clear and convincing reasons. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (Although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so." (internal quotation marks omitted)).

**[5]** The Commissioner concedes that the ALJ's decision does not address Dr. Johnson's opinion that Hill's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." Nevertheless, the Commissioner argues that the ALJ's failure to

consider Dr. Johnson's opinion was harmless because an opinion that an individual cannot work is an opinion on an issue reserved to the Commissioner and, therefore, it is not binding. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). We disagree.

**[6]** Dr. Johnson's statement that Hill would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's *likelihood* of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions. Thus, the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion should have been considered. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

*B.   Dr. Kuka*

Dr. Kuka, a non-treating, non-examining medical consultant, testified at Hill's hearing. Less weight is given to the opinion of a non-examining source than to an examining source. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* at 831.

Hill argues that the ALJ ignored Dr. Kuka's testimony that Hill was "markedly limited" at times when she was suffering panic attacks or manic episodes. But the ALJ clearly acknowledged this testimony, and based his decision in part on Dr. Kuka's opinion that these severe panic attacks or manic episodes only occurred about two times a year for two or three days.

Nevertheless, Dr. Kuka failed to consider that Hill's most recent panic attack, which occurred at the Dollar Tree store on March 7, 2008, kept Hill in bed for five days and out of work for about two weeks. Thus, Dr. Kuka's conclusion that Hill's most severe attacks lasted only two or three days was directly contradicted by the record.

Dr. Kuka also noted that the medical records mention numerous panic attacks, sometimes daily and sometimes several times a week. When the ALJ asked if there was independent verification of this, Dr. Kuka replied that Hill's panic attacks had been "observed on occasions but certainly not to the frequency that they're reported[,] but then that's normal too for therapist notes." It makes sense that not every panic attack would be observed by Hill's physicians, therapists, or counselors (or even family, friends, and co-workers), because these attacks would not always occur in their presence. There remains, however, a substantial amount of evidence in the record that Hill complained of anxiety and panic attacks, and some of those attacks were actually witnessed by Hill's physicians, therapists and counselors.

## C.  Panic Disorder

Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing 42 U.S.C. § 423(d)(2)(B)). In this case, the ALJ found, based in part on Dr. Kuka's opinion, that Hill had severe mental impairments that included bi-polar disorder, mixed personality disorder, anxiety, and borderline intellectual functioning.

But Hill was also diagnosed with panic disorder. The symptoms of Panic Disorder include

> sudden attacks of intense fear or anxiety, usually associated with numerous physical symptoms such

as heart palpitations, rapid breathing or shortness of
breath, blurred vision, dizziness, and racing
thoughts. Often these symptoms are thought to be a
heart attack by the individual, and many cases are
diagnosed in hospital emergency rooms . . . . Left
untreated . . . symptoms can worsen and Agorapho-
bia can develop. In these cases, the individual has
developed such an intense fear that leaving the safety
of home feels impossible.

*Index of Psychiatric Disorders*, *Diagnostic and Statistical
Manual of Mental Disorders*, *Fourth Edition* 2000),
§§ 300.21 & 300.01. Hill described symptoms just like these
when she testified before the ALJ. But the ALJ excluded the
panic disorder diagnosis and improperly limited the definition
of panic attack to only those attacks severe enough to collapse
someone to the ground.

**[7]** Because the ALJ excluded panic disorder from Hill's
list of impairments and instead characterized her diagnosis as
anxiety alone, the residual functional capacity determination
was incomplete, flawed, and not supported by substantial evi-
dence in the record.

* * *

**[8]** For the foregoing reasons, we find that the ALJ
improperly ignored or discounted significant and probative
evidence in the record favorable to Hill's position—including
the opinion of Dr. Johnson and substantial evidence that con-
tradicts Dr. Kuka's opinion—and thereby provided an incom-
plete residual functional capacity determination.

## II. The ALJ's Hypothetical Question to the Vocational Expert

**[9]** At the fifth step of the sequential analysis, the burden
shifts to the Commissioner to demonstrate that the claimant is

not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th cir. 2010). The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted).

**[10]** As discussed earlier, the ALJ failed to include all of Hill's impairments in determining Hill's residual functional capacity, and therefore, the ALJ asked an incomplete hypothetical question of Mr. Fortune, the vocational expert. The hypothetical did not take account of Hill's limitations because of her frequent anxiety and panic attacks, and thereby included incorrect assumptions. Specifically, the hypothetical's assumption concerning Hill's residual functional capacity that she can complete a normal workday and workweek without interruptions from psychologically-based symptoms, and that she can maintain regular attendance, are not supported by the record. "Because neither the hypothetical nor the answer properly set forth all of [Hill's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Accordingly, we hold that the ALJ's hypothetical question to the vocational expert was incomplete and therefore the ALJ's reliance on the vocational expert's answers was improper.

## III.  Remedy

When an ALJ's denial of benefits is not supported by the record, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks omitted). We may exercise our discretion and direct an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *cf. Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

In this case, the ALJ's residual functional capacity determination was flawed and the hypothetical question was incomplete and included incorrect assumptions. When Hill's attorney asked Mr. Fortune, the vocational rehabilitation expert, on cross-examination whether there would be any jobs for a person who had weekly panic attacks and missed work two to four days a month, Mr. Fortune admitted that it would not be possible to engage in substantial gainful activity with absences of that frequency. Because the overall record shows these additional assumptions should have been incorporated into the ALJ's hypothetical, remand is appropriate. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where

the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

## CONCLUSION

**[11]** Substantial evidence does not support the ALJ's determination that Hill is not disabled under the Social Security Act. Accordingly, we **REVERSE** the district court's grant of summary judgment in favor of the Commissioner. On remand, the district court shall refer this case to the ALJ for reconsideration of Hill's application for benefits.

**REVERSED and REMANDED.**