**NOT FOR PUBLICATION**

MAR 02 2016

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| JOHN S. BRADSHAW, | No. 14-55145 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 2:12-cv-06199-JVS-JPR |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | MEMORANDUM\* |
| Defendant-Appellee. | |

Appeal from the United States District Court,
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted February 10, 2016
Pasadena, California

Before: McKEOWN and IKUTA, Circuit Judges and PRATT,\*\* Senior District
Judge.

---

    \*    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    \*\*    The Honorable Robert W. Pratt, Senior District Judge for the U.S.
District Court for the Southern District of Iowa, sitting by designation.

John S. Bradshaw (Bradshaw) appeals the district court's order affirming the denial of his application for Social Security disability insurance benefits by an administrative law judge (ALJ). Bradshaw argues, among other things, that the ALJ's residual functional capacity (RFC) evaluation was erroneous because it was based on inadequate consideration of the evidence of his mental impairments. We review the district court's decision de novo, and will affirm the ALJ's decision if it is both free of legal error and supported by substantial evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. (internal quotation and citation omitted). Because we conclude that the ALJ failed to adequately explain why he rejected certain evidence, and that the error was not harmless, we vacate and remand for further proceedings.

In order to reject an examining doctor's opinion, "the ALJ has to give clear and convincing reasons . . . [e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012) (internal quotation omitted). In determining Bradshaw's mental RFC, the ALJ reviewed the opinions of two doctors: Dr. Lauren Thomas, a

2

consultative psychologist, and Dr. John M. Landsberg, Bradshaw's treating psychiatrist.

Dr. Thomas completed a comprehensive psychiatric evaluation and diagnosed Bradshaw with severe major depressive disorder with psychotic features and post traumatic stress disorder (PTSD). Dr. Thomas concluded that Bradshaw had a Global Assessment of Functioning (GAF) score of 45, indicating major impairments in overall functioning. Dr. Thomas found that Bradshaw's PTSD "contributed significantly to his inability to trust others and be around people and out in public." Dr. Thomas further stated that Bradshaw had only moderate impairments in the areas of accepting instructions from supervisors, interacting with coworkers and the public, maintaining regular workplace attendance, and dealing with the usual stress in a competitive work environment. But Dr. Thomas also stated the more restrictive limitation that Bradshaw "appeared significantly anxious and it is unlikely that he would be able to interact with coworkers and the public."

Dr. Landsberg saw Bradshaw on two occasions and completed a short-form evaluation for mental disorders. Dr. Landsberg diagnosed Bradshaw with major depressive disorder. The form contained a checklist where Dr. Landsberg indicated that Bradshaw had an: "unlimited" ability to understand, remember, and

3

carry out simple instructions; a "good" ability to understand, remember, and carry out complex instructions, as well as maintain concentration, attention, and persistence; and a "fair" ability to perform activities within a schedule, maintain regular attendance, complete a normal workweek without interruptions from psychological symptoms, and respond appropriately to changes in a work setting. The checklist indicated that a rating of "fair" was appropriate when "[t]he evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." The record contains no further description of Bradshaw's impairment in the "fair" categories, nor does the form completed by Dr. Landsberg contain any comment on Bradshaw's ability to interact with members of the public or coworkers.

The ALJ gave Dr. Thomas's opinion "little weight," concluding that a GAF score of 45 was contradicted by Dr. Thomas's conclusion that Bradshaw could perform simple and repetitive tasks. The ALJ noted that Bradshaw's ability to perform simple and repetitive tasks was also supported by the findings of the state's medical consultant, and that no other physician in the record indicated that Bradshaw had mental limitations that would preclude him from all work activity. The ALJ gave the greatest weight to the opinion of Dr. Landsberg, the treating psychiatrist. The ALJ concluded in relevant part that Bradshaw had the RFC to

4

"perform less than the full range of medium work" and that "he is limited to simple routine tasks and minimal contact with the public and coworkers."

We conclude that the ALJ did not resolve the conflict within Dr. Thomas's opinion that on the one hand it was unlikely Bradshaw could interact with the public or coworkers, and on the other that Bradshaw's ability to do so was only moderately impaired. Therefore, the ALJ's reasons for rejecting the opinion that Bradshaw could not interact with the public or coworkers were not specific and legitimate. The ALJ found that Dr. Thomas's report contradicted itself and therefore rejected the GAF of 45, but did not make a similar finding that Dr. Thomas's report contradicted itself regarding Bradshaw's ability to interact with the public or coworkers. A GAF of 45 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000). Such an error was not harmless because it may have affected the ALJ's RFC finding. The RFC finding, in turn, informed the ALJ's examination of the vocational expert, who testified that a hypothetical worker with a similar RFC could work as a cafeteria attendant and

5

an office helper, positions for which at least some interaction with other people is required.

Accordingly, the case must be remanded for the ALJ to fully consider Dr. Thomas's opinion, or provide specific and legitimate reasons for rejecting her conclusion that Bradshaw would be unable to interact with others. *See Hill*, 698 F.3d at 1162 ("When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). On remand, the ALJ may also clarify the meaning of the "fair" designation in Dr. Landsberg's report. Because we remand the case on this basis, we do not reach Bradshaw's remaining arguments.

**VACATED and REMANDED for further proceedings.**

Each party shall bear their own costs.