**Michael Oivind JAHNSEN, Plaintiff,**

v.

**Nancy A. BERRYHILL, acting Commissioner of Social Security, Defendant.**

**No. 1:16–cv–0019–HRH**

United States District Court,
D. Alaska.

Filed 07/13/2017

---

Howard D. Olinsky, Pro Hac Vice, Paul B. Eaglin, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Christopher John Brackett, Social Security Administration, Seattle, WA, Richard L. Pomeroy, U.S. Attorney's Office, Anchorage, AK, for Defendant.

## ORDER

H. Russel Holland, United States District Judge

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 42 U.S.C. §§ 401–434, 1381–1383f. Plaintiff Michael Oivind Jahnsen has timely filed his opening brief,[1] to which

---

1. Docket No. 14.

defendant Nancy A. Berryhill has responded.[2] Oral argument was not requested and is not deemed necessary.

### Procedural Background

On September 25, 2013, plaintiff filed an application for disability benefits under Title II and Title XVI of the Social Security Act. Plaintiff alleged that he became disabled on September 25, 2013. Plaintiff alleges that he is disabled due to rectal, stomach, testicle, and back pain; bad kidneys; bad right wrist; bad knees; and depression. Plaintiff's applications were denied initially on February 12, 2014. After a hearing on March 6, 2014, an administrative law judge (ALJ) denied plaintiff's claims. On October 20, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's August 8, 2015 decision the final decision of the Commissioner. On December 19, 2016, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

### General Background

Plaintiff was born on June 1, 1962. He was 52 years old at the time of the administrative hearing. Plaintiff has a GED. Plaintiff lives in an apartment. Plaintiff's past relevant work includes work as a catering coordinator, janitor, and personal care attendant.

### The ALJ's Decision

The ALJ first determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2018."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since September 25, 2013, the alleged onset date...."[5] At the time of the hearing, plaintiff was working as a care giver for one of his neighbors two hours a day, seven days a week,[6] but his earnings did not rise to SGA levels.[7]

At step two, the ALJ found that plaintiff had "the following severe impairments: major joint dysfunction to the right knee and right wrist, degenerative joint disease of the lumbar spine, depression, anxiety, and obesity."[8] The ALJ determined that plaintiff's hiatal hernia and diverticulitis were non-severe.[9] The ALJ found plain-

---

2. Docket No. 17.

3. Admin. Rec. at 13.

4. The five steps are as follows:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the

claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.
Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

5. Admin. Rec. at 13.

6. Admin. Rec. at 36.

7. Admin. Rec. at 13.

8. Admin. Rec. at 13.

9. Admin. Rec. at 14.

tiff's alcohol use disorder and cannabis use disorder non-severe because plaintiff "ceased use of these substances" and there were "no recurrent lapses" in the treatment record.[10] The ALJ also found plaintiff's hypertension non-severe.[11] The ALJ noted that plaintiff had been diagnosed with autism but found that this was "a non-medically determinable impairment or, at best, non-severe." [12]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...." [13] The ALJ considered Listings 1.02 (major dysfunction of any joint), 1.04 (disorders of the spine), 12.04 (affective disorder), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders).[14] The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation, which have been of extended duration.[15] Thus, the ALJ found that the "paragraph B" criteria were not satisfied.[16] The ALJ also found that the "paragraph C" criteria were not satisfied.[17]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had the

residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently stoop, kneel, crouch, crawl, climb ramps or stairs, and engage in fine or gross manipulation with the right upper extremity; can occasionally interact with the general public and climb ladders, ropes, or scaffolds; should avoid moderate exposure to extreme cold and concentrated exposure to excessive vibration; and should only work in a low-stress job, defined as consisting of only occasional decisionmaking or changes in the work setting.[[18]]

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff was motivated by secondary gain; he was resistant to treatment; his actions were inconsistent with his allegations; and there was evidence that he was exaggerating his symptoms.[19]

The ALJ gave significant weight[20] to Dr. Kesselring's and Dr. Winn's opinions.[21] The ALJ also gave significant weight[22] to Dr. Christensen's opinion[23] and Dr. Cald-

---

10. Admin. Rec. at 14.

11. Admin. Rec. at 14.

12. Admin. Rec. at 14.

13. Admin. Rec. at 14–15.

14. Admin. Rec. at 15.

15. Admin. Rec. at 16.

16. Admin. Rec. at 16.

17. Admin. Rec. at 16.

18. Admin. Rec. at 17.

19. Admin. Rec. at 21.

20. Admin. Rec. at 21–22.

21. These opinions are discussed below in detail.

22. Admin. Rec. at 22.

23. On December 12, 2013, Ronald E. Christensen, M.D., examined plaintiff. Dr. Christensen opined that plaintiff

appears to maximize his symptoms. He seems to have no difficulty sitting or standing. He can move about without difficulty. His gait is non antalgic. He does appear capable of doing at least light lifting and carrying. He has no dexterity issues in his hands other than some range of motion deficit in his right wrist. He has no prob-

well's opinion.[24] The ALJ gave little weight[25] to Dr. DiGiulio's opinion.[26] The ALJ also gave little weight[27] to Michael Head's opinion[28] and to the testimony of plaintiff's friend, Albert Dowd.[29] Finally, the ALJ gave little weight[30] to plaintiff's GAF scores.[31]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[32]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including working as a small parts assembler and a hotel housekeeper.[33] This finding was based on the testimony of the vocational expert.[34]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from September 25, 2013, through the date of this decision...."[35]

### Standard of Review

■ Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the

---

lems speaking or seeing and no obvious impairment to travel. Admin. Rec. at 392.

**24.** On December 23, 2013, Jay Caldwell, M.D., opined that plaintiff could occasionally lift/carry 35 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; could frequently push/pull with upper extremities; had no limitations as to climbing ramps/stairs, balancing, kneeling, and crawling; could frequently climb ladders/scaffolds, stoop, and crouch; was unlimited as to reaching and feeling; could frequently handle and finger on the right but was unlimited on the left; should avoid moderate exposure to extreme cold and vibration; and should avoid concentrated exposure to extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, poor ventilation, and hazards. Admin. Rec. at 400–403.

**25.** Admin. Rec. at 22.

**26.** Dr. DiGiulio's opinion is discussed below in detail.

**27.** Admin. Rec. at 23.

**28.** Mr. Head, who is employed by the Division of Vocational Rehabilitation, testified at the administrative hearing that based on Dr. DiGiulio's evaluation, it was his opinion that plaintiff could not "be in competitive employment...." Admin. Rec. at 65.

**29.** Mr. Dowd completed a third-party function report on November 8, 2013. Admin. Rec. at 264–272.

**30.** Admin. Rec. at 23.

**31.** On November 13, 2013, plaintiff's GAF score was 63. Admin. Rec. 362. His GAF score on August 8, 2014 was 53. Admin. Rec. at 431. And, his GAF score was 45 on both September 12, 2014 and November 9, 2015. Admin. Rec. at 497, 508.

**32.** Admin. Rec. at 25.

**33.** Admin. Rec. at 25–26.

**34.** Admin. Rec. at 26. Daniel Labrosse testified as the vocational expert at the administrative hearing. Admin. Rec. at 79–88.

**35.** Admin. Rec. at 26.

ALJ's conclusion.' " Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed " 'simply by isolating a specific quantum of supporting evidence.' " Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). ..

## Discussion

Plaintiff first argues that the ALJ erred in assessing his RFC. The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently stoop, kneel, crouch, crawl, climb ramps or stairs, and engage in fine or gross manipulation with the right upper extremity; can occasionally interact with the general public and climb ladders, ropes, or scaffolds; should avoid moderate exposure to extreme cold and concentrated exposure to excessive vibration; and should only work in a low-stress job, defined as consisting of only occasional decisionmaking or changes in the work setting.[36]

Plaintiff argues that this RFC was incomplete because it fails to account for his moderate limitations in maintaining concentration, persistence, or pace. Plaintiff argues that the ALJ accepted medical evidence that he had moderate difficulty maintaining concentration, persistence, or pace, yet failed to include any limitations on concentration, persistence, or pace.

The ALJ gave significant weight to Dr. Winn's opinion. Dr. Winn, who was a non-examining source, opined that plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration.[37] Dr. Winn also opined that plaintiff was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and set realistic goals and make plans independently of others.[38]

The ALJ restricted plaintiff to a "low-stress job, defined as consisting of only occasional decisionmaking or changes in the work setting." [39] This was simply another way of the ALJ saying that plaintiff was limited to "simple" work as the ALJ made clear later in her decision when discussing the opinions of Dr. Winn and Dr. Kesselring,[40] opinions to which the ALJ gave significant weight.[41] The ALJ noted that Dr. Winn had opined that plaintiff had moderate limitations as to concentration, persistence, or pace and that Dr. Kesselring found that plaintiff's mental symptoms

---

36. Admin. Rec. at 17.

37. Admin. Rec. at 100.

38. Admin. Rec. at 106–107.

39. Admin. Rec. at 17.

40. Dr. Kesselring, who was an examining source, opined that plaintiff's "psychological problems appear to interfere with his functioning in some ways, by reducing his energy, motivation, and desire to be around people, for example. These do not appear to significantly interfere with his ability to work; in fact, the loss of employment is probably a contributing factor to his depression." Admin. Rec. at 385.

41. Admin. Rec. at 21–22.

would interfere with his capacity to work, but not significantly.[42] The ALJ then stated that she was "accomodat[ing] these findings [and] opinions[ ] by limiting the claimant to simple work in a low stress setting, with only occasional interaction with the public."[43] This was error because limiting plaintiff to "simple work" does not adequately address his moderate limitations as to concentration, persistence, or pace.

Defendant's argument that there was no error here is not well taken. Defendant argues that the ALJ's step three "paragraph B" finding that plaintiff had moderate limitations as to concentration, persistence, or pace is separate and independent of the ALJ's RFC determination, which occurs between steps three and four. Defendant points out that the social security regulations state that

> [a]n assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. As explained more fully in SSR 96–8p,

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]

Defendant points out that the ALJ even quoted this exact language from SSR 96–8p in her decision,[44] which defendant argues is an indication the ALJ realized that the RFC assessment was separate and distinct from her step three findings.

But even though the RFC assessment is separate and distinct from the ALJ's step three findings, that does not mean that the ALJ did not error here. "Numerous unpublished district court opinions have [found] error when the ALJ finds that a claimant has moderate limitation in maintaining concentration, persistence, or pace at step two [or three], but attempts to account for this in the RFC only by limiting the claimant to simple, repetitive work." Friesth v. Berryhill, No. CV 16-3535-KES, 2017 WL 901882, at *5 (C.D. Cal. Mar. 7, 2017). These courts have relied on Brink v. Comm'r Soc. Sec. Admin., 343 Fed.Appx. 211 (9th Cir. 2009), to reach this conclusion.

In Brink, the ALJ "accepted medical evidence that Brink has moderate difficulty maintaining concentration, persistence, or pace. However, the ALJ's initial hypothetical question to the vocational expert referenced only 'simple, repetitive work,' without including limitations on concentration, persistence or pace." Id. at 212. The court concluded that "[t]his was error." Id.; see also Lubin v. Comm'r of Soc. Sec. Admin., 507 Fed.Appx. 709, 712 (9th Cir. 2013) ("Although the ALJ found that the [claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination").

---

42. Admin. Rec. at 22.

43. Admin. Rec. at 22.

44. Admin. Rec. at 16–17.

Similarly here, the ALJ gave significant weight to the opinion of Dr. Winn, who opined that plaintiff had moderate limitations as to concentration, persistence, or pace; yet then the ALJ failed to account for these limitations in plaintiff's RFC, instead only limiting him to work in a low-stress job, which the ALJ defined as consisting of only occasional decision making or changes in the work setting. Like the ALJs in <u>Brink</u> and <u>Lubin</u>, the ALJ here erred because the RFC was incomplete.

This case is not analogous to <u>Stubbs–Danielson v. Astrue</u>, 539 F.3d 1169 (9th Cir. 2008), as defendant argues. In <u>Stubbs–Danielson</u>, Dr. McCollum, an examining source, had found that Stubbs–Danielson had "good persistence, but a slow pace in thought and action" and he "observed that Stubbs–Danielson could follow three-step instructions." <u>Id.</u> at 1171. Dr. Eather, a non-examining source, noted Dr. McCollum's observation about Stubbs–Danielson's slow pace and opined that she "could perform simple work without public contact." <u>Id.</u> The "ALJ determined that Stubbs–Danielson 'retain[ed] the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public.'" <u>Id.</u> "Stubbs–Danielson argue[d that] the RFC finding d[id] not capture the deficiency in pace and other mental limitations identified by" Dr. McCollum and Dr. Eather. <u>Id.</u> at 1173. The court rejected this argument. <u>Id.</u> The court explained that while Dr. McCollum had found that Stubbs–Danielson had moderate limitations in terms of pace, he

> did not assess whether Stubbs–Danielson could perform unskilled work on a sustained basis. Dr. Eather's report did. Dr. Eather's report, which also identified "a slow pace, both in thinking & actions" and several moderate limitations in other mental areas, ultimately

concluded Stubbs–Danielson retained the ability to "carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading."

<u>Id.</u> The court concluded that "[t]he ALJ translated Stubbs–Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'" <u>Id.</u> at 1174.

But unlike <u>Stubbs–Danielson</u>, in which Dr. Eather actually opined that the claimant should be restricted to simple tasks, a limitation that Dr. Eather found would accommodate Stubbs–Danielson's problems with pace, Dr. Winn did not find that plaintiff's problems with concentration, persistence, or pace could be translated into a restriction to "simple tasks" or "simple work." The ALJ had no recommendations from any medical source that plaintiff's moderate limitations as to concentration, persistence, or pace could be translated into a restriction to simple work, or a restriction to a low-stress job with little decision making and public contact. Here, the ALJ erred because in assessing plaintiff's RFC, the ALJ failed to account for Dr. Winn's opinion, an opinion to which she gave significant weight, that plaintiff had moderate restrictions as to concentration, persistence, or pace. In short, the ALJ's RFC was incomplete.

■ Plaintiff next argues that the ALJ erred in giving little weight to Dr. DiGiulio's opinion. Dr. DiGiulio opined that "[b]ased on Mr. Jahnsen's primary diagnosis of Autism Spectrum Disorder, I do not see him as a viable candidate for competitive employment, even with vocational supports in place."[45] Dr. DiGiulio was an examining source. "[T]he opinion of an examining doctor, even if contradicted by

---

**45.** Admin. Rec. at 491.

another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995). Dr. DiGiulio's opinion contradicts Dr. Kesselring's and Dr. Winn's opinions. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. DiGiulio's opinion.

The ALJ rejected Dr. DiGiulio's opinion because her opinion "goes to the legal conclusion of disability which is a finding exclusively reserved for the Commissioner", because Dr. DiGiulio "relied in part upon statistically invalid test results for her primary diagnosis of autism[,]" and because Dr. DiGiulio's autism diagnosis was "dubious in the context of the evidence of record as a whole."[46] The ALJ also found Dr. DiGiulio's opinion undermined by the fact that plaintiff had been able to work at substantial gainful activity for years, despite the fact that, according to Dr. DiGiulio, his "autism would have been longstanding and not developed recently[.]"[47] Plaintiff argues that none of these are legitimate reasons.

■ As for the first reason, that Dr. DiGiulio's opinion "goes to the legal conclusion of disability which is a finding exclusively reserved for the Commissioner[,]"[48] "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [defendant] will determine that [the claimant is] disabled."

20 C.F.R. § 404.1527(d)(1). But in Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012), the court found that the ALJ had erred in failing to consider a medical opinion that the plaintiff was "unlikely" to work full time because this opinion was "not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill face[d.]" Similarly here, Dr. DiGiulio's opinion that plaintiff was not a "viable candidate for competitive employment" was her assessment, based on a battery of objective tests,[49] as to his ability to maintain employment. The ALJ's first reason was not legitimate.

■ As for the second reason, that Dr. DiGiulio relied, in part, on statistically invalid test results, Dr. DiGiulio did note that plaintiff's Multiphasic Personality Inventory–2 Restructured Format "profile is considered statistically invalid[.]"[50] But this was not a legitimate reason to discount Dr. DiGiulio's opinion, which was based on her diagnosis of autism, because Dr. DiGiulio explained that plaintiff's "response set is not at all uncommon in individuals who are on the autistic spectrum and experiencing psychiatric symptoms."[51] This reason was nothing more than the ALJ substituting her "lay opinion ... for that of a professional[,]" which she may

---

46. Admin. Rec. at 22.

47. Admin. Rec. at 22–23.

48. Admin. Rec. at 22.

49. Dr. DiGiulio gave plaintiff the following tests: 1) the Wechsler Adult Intelligence Scale–Fourth Edition, 2) the Wide Range Achievement Test–Fourth Edition, 3) the Boston Naming Test, 4) the Visual Naming Test from the Multilingual Aphasia Examination, 5) the Gordon Diagnostic Vigilance Task, 6) the Distractibility Task, 7) selected subtests from the Delis–Kaplan Executive Functioning System, 8) the Rey Complex Figure copying task, 9) the Wisconsin Card Sorting test, 10) Beck Depression Inventory–II, 11) the Beck Hopelessness Inventory, 12) the Beck Anxiety Inventory, and 13) the Minnesota Multiphasic Personality Inventory–2 Restructured Format. Admin. Rec. at 486–489.

50. Admin. Rec. at 489.

51. Admin. Rec. at 489.

not do. Flores v. Colvin, No. ED CV 16-1020-PLA, 2017 WL 367408, at *6 (C.D. Cal. Jan. 24, 2017) (citing Tackett, 180 F.3d at 1102–03).

 As for the third reason, that Dr. DiGiulio's autism diagnosis was "dubious" in light of the record as a whole, this was not a legitimate reason. Dr. DiGiulio was the only examining mental health source who reviewed the entire medical record prior to offering her assessment.[52] Dr. Kesselring, on the other hand, indicated that he had "no records available for review."[53] Moreover, the "record as a whole" in this case is minimal and Dr. DiGiulio's examination of plaintiff appears to have been the most thorough.

 As for the fourth reason, plaintiff argues that Dr. DiGiulio's opinion was not undermined by the fact that plaintiff had been able to work prior to his onset of disability date. Plaintiff argues that it is immaterial whether he worked prior to his onset date, that the ALJ is only supposed to be determining whether he was unable to work as of the onset date. See Stoner v. Colvin, No. 3:16-CV-05373-DWC, 2016 WL 7228784, at *3 (W.D. Wash. Dec. 14, 2016) ("[p]laintiff's work history prior to the alleged onset date is of limited probative value", particularly since the plaintiff "was in an accident and suffered a traumatic brain injury on the date of [the p]laintiff's alleged onset of disability").

This was, however, a legitimate reason. If Dr. DiGiulio was correct that plaintiff's autism would prevent him from working now, it stands to reason that his autism would have always prevented him from working, which simply has not been the case. The record shows that plaintiff consistently maintained competitive employment for a number of years. Assuming that Dr. DiGiulio's diagnosis of autism was

correct, her opinion that plaintiff could not work as a result would be undermined by plaintiff's prior work history. Because this reason provides sufficient support for the ALJ's rejection of Dr. DiGiulio's opinion, the ALJ did not err in rejecting Dr. DiGiulio's opinion.

 But because the ALJ erred in assessing plaintiff's RFC, the court must decide whether to remand this matter for benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown–Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Because the ALJ's RFC was incomplete, a remand for further proceedings would be appropriate.

---

**52.** Admin. Rec. at 485.

**53.** Admin. Rec. at 382.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 13th day of July, 2017.